# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARDELL COWART,<br><br>            Plaintiff,<br><br>    v.<br><br>RAHMAN, et al.,<br><br>            Defendants. | No. 1:16-CV-00004-AWI-SKO (PC)<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE**<br><br>**(Doc. 1)**<br><br>**THIRTY (30) DAY DEADLINE** |

### I. Background

Plaintiff, Gardell Cowart, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint in this action on January 4, 2016.[1] (Doc. 1.)[2]

#### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff filed a motion seeking leave to file an amended complaint, which was denied on February 9, 2016, as unnecessary under Federal Rule of Civil Procedure 15(a) since he has not previously amended his complaint and defendants have not filed a responsive pleading. (*See* Doc.s 12, 13.) However, despite the lapse of more than two months, Plaintiff has not filed an amended complaint, so his original complaint is before the Court for screening.
[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

### B. Summary of Plaintiff's Complaint

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California -- where the majority of acts he complains of occurred. Plaintiff names prison staff from High Dessert State Prison ("HDSP") (Dr. C. Abdur Rahman) and SATF (Warden Stu Sherman; CEO C. Cryer; CMO Ugwueze; Dr. Ngozi Igbinoza; Dr. Kandkhorova; Dr. Scharffenberg; Correctional Counselor II ("CCII") T. May; and Associate Warden ("AW") B. Odle), an outside neurological surgeon from San Luis Obispo, California (Dr. Donald Ramberg); and Sierra Vista Medical Center in San Luis Obispo, California. Plaintiff seeks monetary damages and "appropriate orders according to federal constitutional law, that provide justifiable relief which holds defendants responsible . . . ." (Doc. 1, p. 10 (emphasis in original).)

Plaintiff's allegations are based on the care and treatment he received for his cervical spine -- including surgical intervention, a subsequent infection, and pain management.

As discussed in greater detail below, Plaintiff has stated one cognizable claim, but he may be able to amend to correct the deficiencies so as to make additional claims cognizable. Thus, he is being given the applicable standards based on his stated claims and leave to file a first amended complaint, or he may notify the Court that he desires to proceed only on the claim found cognizable in this order, or he may file a notice of voluntary dismissal.

### C. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as concise as possible. He should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis. Where the allegations against two or more Defendants are factually intertwined, Plaintiff need not repeat the factual allegations separately

3

against each Defendant. Rather, Plaintiff should present his factual allegations and identify whichever Defendants he feels are thereby implicated.

### 2. Exhibits

Plaintiff's Complaint is comprised of approximately 10 pages of factual allegations followed by 234 pages of exhibits.

The Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). If Plaintiff attaches exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or make a similar notation directing the Court to the specific exhibit Plaintiff is referencing. If the exhibit consists of more than one page, Plaintiff must also reference the specific page of the exhibit (i.e. "See Exhibit A, page 3").

At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief. Plaintiff is reminded that, for screening purposes, the Court must assume that Plaintiff's factual allegations are true. It is unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint. Thus, if Plaintiff chooses to file a first amended complaint, he would do well to simply state the facts upon which he alleges a Defendant has violated his constitutional rights and refrain from submitting exhibits.

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362

4

(1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff must clearly identify individual Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis for each violation to place each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). Plaintiff's allegations against "CSATF staff," or "prison officials," or "prison staff" are insufficient to link any named Defendant to offensive acts. Further, Plaintiff's allegations fail to show that the outside neurological surgeon from San Luis Obispo, California (Dr. Donald Ramberg) and/or Sierra Vista Medical Center in San Luis Obispo, California engaged in acts "under color of state law" for his claims against them to be cognizable under section 1983.

### 4. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

//

The fact that claims are premised on the same type of constitutional violation(s) (i.e. for insufficient medical treatment) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event. Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be stricken.

Permissive joinder of defendants is allowed under Federal Rule of Civil Procedure 20(a)(2) where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Thus, where a plaintiff complains of treatment to a specific body part by all of the named defendants, they may be asserted in the same action if Plaintiff seeks relief against them jointly, severally, or in the alternative and there is a common question of law or fact.

### 5. Statute of Limitations

Prisoners generally have four years from the date the claim accrues to file their action. *See Wallace v. Kato,* 549 U.S. 384, 387–88 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge). The date that Plaintiff filed this action, January 4, 2016, is the determinative date regarding the timeliness of Plaintiff's claims. (Doc. 1.) Thus, any claims based on events prior to January 4, 2012 are barred.

Plaintiff states a number of allegations against Dr. C. Abdue Rahman while Plaintiff was housed at HDSP which related to events that occurred in 2010 and 2011. (Doc. 1, pp. 5-6.) Thus, Plaintiff's claims against Dr. Rahman are barred since untimely.

### D. Claims for Relief

#### 1. Serious Medical Need

Plaintiff's allegations are entirely premised on the care and treatment (or lack thereof) for his cervical spine.

6

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc))

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). For screening purposes, the condition of Plaintiff's cervical spine (which required multiple surgeries and became infected) is accepted as a serious medical need.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have

7

been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060.

### a. 2011 - January 8, 2015

Plaintiff alleges that, in 2011, he was transferred to CSATF where he currently resides. (Doc. 1, p. 6.) Dr. Igbinoza became his primary care provider. (*Id.*) Plaintiff alleges that Dr. Igbinoza reviewed his medical file but, despite Plaintiff's complaints of severe pain, discomfort which badly disrupted Plaintiff's sleep, Dr. Igbinoza ignored the "documented and verified medical condition" of Plaintiff's cervical spine until 2015. (*Id.*) As previously stated, any allegations pertaining to events that occurred prior to January 4, 2012 are untimely and barred. Thus, only incidents that occurred thereafter are considered. Plaintiff fails to state any specific facts that show what acts he feels Dr. Igbinoza did or failed to do that amounted to deliberate indifference to Plaintiff's condition. Plaintiff must state allegations with sufficient specificity to alert Dr. Igbinoza as to the basis of Plaintiff's claims against him -- merely stating that Dr. Igbinoza was aware of his condition and ignored it is too conclusory to be cognizable. Thus, Plaintiff fails to state any cognizable claims against Dr. Igbinoza for the treatment he provided, or failed to provide, from January 5, 2012, through January 8, 2015.

### b. January 9, 2015 - January 30, 2015

Plaintiff alleges that, on January 9, 2015, he was transported to Sierra Medical Center where Dr. Ramberg performed a "cervical laminectomy, foraminotomy" of the C5-6/6-7 levels of his spine. (Doc. 1, p. 6.) Plaintiff complains that he was not given any antibiotics before or after

8

the surgery. (*Id.*) Three days after the surgery, Plaintiff was transported back to the general population of CSATF with aftercare instructions from Dr. Ramberg for pain medication, dressing changes, and follow-up appointments. (*Id.*, pp. 6-7.) Despite "showing signs of possible infection" at the surgical site, he was not transported to Mercy Hospital until January 24, 2015, where he was examined, diagnosed with a MRSA infection, and was immediately scheduled for surgery with Dr. Serxner. (*Id.*, p.7.) Plaintiff was in severe pain during his stay at the hospital and was transported back to CSATF on January 30, 2015. (*Id.*)

Plaintiff attempts to state a claim against Dr. Ramberg for not prescribing antibiotics for him both before and after the January 9, 2015, surgery. However, Plaintiff has failed to allege anything more than a difference of opinion between himself and Dr. Ramberg over whether antibiotics should have been prophylactically prescribed for his surgery. This is insufficient to state a cognizable Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Further, before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). Thus, Plaintiff fails to state a cognizable claim against Dr. Ramberg for any actions pertaining to the January 9, 2015 surgery or his aftercare.

### c. February 2015 - March 2015

Upon arrival at CSATF after being treated the first time for the MRSA infection, Plaintiff was placed in the medical center for treatment which consisted of Vancomycin (an antibiotic) via "PCC line" since there was a danger that his vein might collapse if it was given intravenously. (Doc. 1, p. 7.) Plaintiff alleges that, during the time period when he was at CSATF, he was in severe pain from multiple changes in his medications; he was not allowed to contact his family; and that subsequent to leaving the medical facility at CSATF, he "had to remove (PCC line) due to harsh treatment by staff and fear that amounted to heightened duress." (*Id.*) None of these allegations are sufficiently linked to any Defendant named in this action to be cognizable.

Plaintiff alleges that during this time, Dr. Igbinoza changed his pain medication to Tylenol #3 instead of Morphine which Dr. Ramberg prescribed after the January 9, 2015 surgery. (*Id.*, p. 8.) Plaintiff has adequately alleged that Dr. Igbinoza unreasonably ignored the treatment plan of a more specialized physician, Dr. Ramberg, by changing Plaintiff's prescribed pain medication from Morphine to Tylenol #3. *See Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (concluding that reliance on "non-specialized" medical conclusions may constitute deliberate indifference to a plaintiff's medical needs), overruled on other grounds by *Peralta*, 744 F.3d 1076; *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference."). Thus, Plaintiff states a claim for deliberate indifference to his serious medical needs against Dr. Igbnoza for changing Plaintiff's pain prescription from Morphine to Tylenol #3.

Shortly thereafter, because of neck and chest pain, Plaintiff was transported to San Joaquin Community Hospital in Bakersfield. (*Id.*) He was found to have a fluid collection at the C5-6, C6-7, and T1-2 levels of his spine which was suspected of being a MRSA relapse. (*Id.*) He was placed back on Vancomycin and returned to CSATF where he was placed under the care of Dr. Schraffenberg. (*Id.*) Dr. Schraffenberg examined Plaintiff and ordered an MRI which, though it could not be entirely completed due to Plaintiff's pain, revealed a new "large disc herniation at C5-6, C6-7." (*Id.*) Plaintiff was referred back to Dr. Ramberg who recommended a third surgery which. (*Id.*) Despite Plaintiff's continuing high degree of pain, "CSATF medical staff" declined to authorize this surgery request. (*Id.*)

These allegations are not cognizable against Dr. Schraffenberg as they fail to show that he was deliberately indifferent to Plaintiff's condition. Indeed, Plaintiff's allegations acknowledge that Dr. Schraffenberg examined him, ordered an MRI, and that Plaintiff was thereafter referred to Dr. Ramberg for surgical consultation. It appears as though Plaintiff named Dr. Schraffenberg as a defendant in this action merely because he was a physician who saw and examined Plaintiff through the course of his care.

//

These allegations also fail to state a cognizable claim against Dr. Ramberg for merely recommending a third surgery for Plaintiff. Further, while declining to authorize a surgery recommended by a specialist may amount to deliberate indifference, Plaintiff's allegation that it was declined by "CSATF medical staff" is insufficient to link the denial of his surgery to any state actor for liability to attach under section 1983.

### d. April 7, 2015

On April 7, 2015, Plaintiff was transferred to Facility A where Dr. Sunduram became his primary care physician. (*Id.*) Despite Plaintiff's multiple complaints of pain which only allowed him to sleep 2-3 hours per night, Dr. Sunduram instructed Plaintiff to request mental health treatment, suggesting that there Plaintiff might obtain prescriptive medication which would promote sleep. (*Id.*) However, Dr. Sunduram recommended this without addressing the pain which caused Plaintiff's difficulty with sleep. (*Id.*) Plaintiff filed an inmate appeal seeking pain management treatment which was partially granted at the first level and noted "no further deliberate indifference." (*Id.*, p.9.) These allegations amount to a difference of opinion with Dr. Sunduram's treatment plan, which as previously indicated, is not cognizable. *See Estelle*, 429 U.S. at 107. Further, Plaintiff's allegations regarding the handling of his inmate appeal fail since not linked to any named Defendant.

### e. September 2015

On September 16, 2015, Plaintiff alleges he was taken to the Unit Classification Committee ("UCC"). (Doc. 1, p. 9.) The UCC asked Plaintiff if his medical needs were being met at CSATF; Plaintiff responded in the negative and stated that he was "high risk medical" and required a higher level of care than CSATF is designated. (*Id.*) The UCC action acknowledged that Plaintiff is medically designated "high risk" but noted that he was "taken to UCC for appropriate housing due to high risk and annual review. UCC elects Chino (IM) recommendation and CSATF (Alt) overriding medical to house." (*Id.*) Plaintiff filed an inmate appeal on September 23, 2015, regarding inappropriate housing by the UCC which was "reluctantly denied" because of a lack of bed space at an intermediate healthcare institution. (*Id.*)

//

11

Plaintiff remains in severe pain and has requested surgical intervention due to "no prescribed medication relief." (*Id.*) Plaintiff is still unable to sleep more than 3 hours per night and "staff is aware, but does not help." (*Id.*) Plaintiff alleges that CSATF is not a high risk medical care facility, but that Defendants May, Odle, and Stusherman have forced him to stay there because of their decision as the UCC solely because of overcrowding. (*Id.*)

In determining whether a prison official responded reasonably to a known risk, the resources available to the official, including financial resources, or the lack thereof, may be considered. *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (overruling *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012) and *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) to the extent they can be read to preclude jurors from considering lack of resources in cases involving claims for money damages against prison officials who lack authority over budgeting decisions). Plaintiff does not state a cognizable claim for the UCC decision which inappropriately housed him. If Plaintiff seeks monetary damages for inappropriate housing for his medical condition, it is not cognizable. Further, injunctive relief by way of appropriate housing is also not cognizable since Plaintiff is no longer housed at CSATF.

### 2. Inmate Appeals

It appears that Plaintiff intends to grieve the actions of various Defendants for their involvement in the processing and reviewing of his 602 inmate appeals related to the delay of radiation therapy and surgery for his keloids.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

//

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis,* 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) citing *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to prove the elements of a constitutional violation purely for the processing and/or reviewing of his inmate appeals. However, Plaintiff may be able to prove the elements for a claim under the Eight Amendment for deliberate indifference to his serious medical needs against medical personnel involved in reviewing his inmate appeals. If Plaintiff meets his burden of proof as to the elements of a claim against a defendant for deliberate indifference to his serious medical needs, he will likely also be able to meet his burden of proof as to the elements of a claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue

### 3. Supervisory Liability

It appears that Plaintiff may have named some of the Defendants because they hold supervisory positions.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.*

//

14

Thus, Plaintiff does not, and cannot state a cognizable claim against any state actors merely because their subordinates violated Plaintiff's rights.

### 4. Supplemental Jurisdiction -- State Law Claims

As mentioned above, many of Plaintiff's allegations imply that he has been subjected to circumstances that might amount to medical malpractice under California law. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Supplemental jurisdiction will not be extended to state law claims beyond the circumstances of the specific claims under section 1983 that a plaintiff proceeds on. Further, Under the California Tort Claims Act ("CTCA"), set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or

15

official.  *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244 (2004).  Thus, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."  *Id*. at 1239 (fn.omitted).

Plaintiff fails to state any allegations to show compliance with the CTCA so he may proceed on his claims under California law in this action.  However, if Plaintiff has complied with the CTCA, jurisdiction over his claims under California law will only be allowed to proceed in this Court as long as he has federal claims pending on the same case or controversy.

## II.     CONCLUSION

For the reasons discussed above, Plaintiff has only stated a cognizable claim against Dr. Igboniza for violation of the Eight Amendment when he changed Plaintiff's pain medication from Morphine as prescribed by Dr. Ramberg to Tylenol #3.  Plaintiff must notify the Court of his decision to proceed on this cognizable claim, file a first amended complaint, or file a statement of voluntary dismissal within 30 days of the service of this order.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension within that same time-frame.

If Plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  The first amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. 127, 555

(2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff SHALL:
   a. file a first amended complaint curing the deficiencies identified by the Court in this order, not to exceed twenty-five pages, excluding exhibits; or
   b. notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; or
   c. file a notice of voluntary dismissal of the entire action; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **April 25, 2016**                              **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE