# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARDELL COWART,<br><br>            Plaintiff,<br><br>    v.<br><br>RAHMAN, et al.,<br><br>            Defendants. | No.  1:16-CV-00004-AWI-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATION THAT PLAINTIFF PROCEED ON MEDICAL CLAIMS UNDER THE EIGHT AMENDMENT AGAINST DR. IGNIBINOZA, DR. SCHAREFENBERG, DR. KANDKHOROVA, DR. UGWUEZE, AND DR. SUNDURAM and THAT DEFENDANTS MAY AND ODLE AND ALL CLAIMS AGAINST THEM TO BE DISMISSED and THAT PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF VIA TRANSFER TO BE DENIED**<br><br>**(Docs. 14, 22)**<br><br>**THIRTY (30) DAY DEADLINE** |

## **FINDINGS**

### A.   Background

Plaintiff, Gardell Cowart, is a prisoner of the California Department of Corrections and Rehabilitation ("CDCR") and is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint based on the care and treatment he received after surgery on his cervical spine.  As discussed below, Plaintiff states cognizable claims against Dr. Ignibinoza, Dr. Scharffenberg, Dr. Kandkhorova, Dr. Ugwueze, and Dr. Sunduram for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, because they failed to follow the post-surgical orders as directed by Plaintiff's

surgeons. All other claims and defendants should be dismissed.

### B. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

### C. Summary of the First Amended Complaint

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, where the acts he complains of occurred. Plaintiff names Chief Medical Officer ("CMO") Dr. Ugwueze; Dr. Ngozi Igbinoza; Dr. Kandkhorova; Dr. Scharffenberg; Dr. Sunduram; Correctional Counselor II ("CCII") T. May; and Associate Warden ("AW") B. Odle as defendants in this action. Plaintiff seeks monetary damages as well as declaratory and injunctive relief.

Plaintiff's allegations are based on the care and treatment he received following a surgical procedure on his cervical spine in 2015. Plaintiff alleges that physicians named in this action failed to follow the instructions given by his surgeons which caused him to contract multiple infections at the surgical cite and to endure extreme pain. Plaintiff alleges that CCII May and AW Odle violated his rights by not transferring him to an "Intermediate Care Facility."

As discussed in greater detail below, Plaintiff has stated cognizable claims against the physicians upon which he should be allowed to proceed. However, he is unable to state cognizable claims against CCII May and AW Odle for not transferring him; as such, those defendants and all claims against them should be dismissed.

**D.     Pleading Requirements**

      **1.     Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

///

# DISCUSSION

### A.   Plaintiff's Claims

#### 1.   Deliberate Indifference to Serious Medical Need

Plaintiff's allegations are entirely premised on post-operative care and treatment (or lack thereof) for his cervical spine.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc))

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). For screening purposes, the condition of Plaintiff's cervical spine (which became infected and required multiple surgeries) is accepted as a serious medical need.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " *Farmer v.*

*Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing:  (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted).  Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060.

Plaintiff alleges that, on January 9, 2015, he was transported to Sierra Medical Center where Dr. Ramberg, who is not a defendant, performed a surgery on his cervical spine.  (Doc. 15, p. 6.)  Post-surgical care instructions included daily dressing changes, a prescription for medication for pain, and a list of warning signs for possible infection.  (*Id.*)  Upon arrival at SATF, Plaintiff was placed in general population and almost immediately began to experience nausea, dizziness, heat flashes, drainage of yellowish fluid and blood from the surgery cite (which necessitated 6-8 dressing changes per day), and severe pain.  (*Id.*)  RN Corey, who is not a defendant, reported all of these symptoms to Plaintiff's then primary care provider ("PCP"), Dr. Ignibinoza.  (*Id.*)  However, Dr. Ignibinoza ignored RN Corey's reports until January 24, 2015, when Plaintiff was sent to Mercy Hospital in Bakersfield, California.  (*Id.*, at p. 7.)  At the hospital, various tests were run and it was determined that Plaintiff had contracted MRSA.  (*Id.*)

Dr. Serxner, who is not a defendant, performed a surgery to clean out the infection.  Upon arrival back at SATF, Plaintiff was placed in the Central Treatment Facility ("CTC").  (*Id.*)  Per

5

Dr. Serxner's order, Plaintiff was placed on Vancomycin via a peripherally inserted central catheter ("PICC line"). (*Id.*) Dr. Serxner prescribed a treatment plan for Plaintiff which consisted of morphine and oxycarbazepine for pain, flexeril for muscle spasms, and vancomycin for infection. (*Id.*) However, despite Plaintiff's continuing high level of pain, his new PCP, Dr. Kandkhorova, reduced the dose of morphine Plaintiff received and repeatedly replaced it with only Tylenol with Codeine. (*Id.*, at p. 8.) This caused Plaintiff to remain in severe pain. (*Id.*) In an attempt to be able to contact his family and out of fear of mistreatment from prison staff, Plaintiff removed the PICC line so he could be placed back in the general population. (*Id.*) Dr. Kandkhorova gave Dr. Ignibinoza instructions and direction to take over Plaintiff's care and treatment. (*Id.*) These new instructions consisted of an antibiotic other than Vancomycin, and a low dose of morphine -- neither of which complied with Dr. Serxner's prescriptions. (*Id.*) Plaintiff relapsed and was returned to the hospital where a fluid collection was once again discovered on his spine. (*Id.*) Upon return to SATF, Plaintiff was placed back on morphine and Vancomycin and Dr. Schraffenberg became his PCP. (*Id.*) Dr. Schraffenberg discontinued Plaintiff's morphine and referred him for an MRI. (*Id.*)

    Plaintiff was once again placed in the CTC and Dr. Kandkhorova again became his PCP. (*Id.*) Dr. Kandkhorova acknowledged Dr. Serxner's post-surgical treatment plan to Plaintiff, and continued Plaintiff's Vancomycin, but lowered his dose of morphine which caused Plaintiff to continue to experience severe pain. (*Id.*) Upon completion of the Vancomycin treatment, Plaintiff was returned to the general population where Dr. Schraffenberg was once again assigned as Plaintiff's PCP. (*Id.*) Dr. Schraffenberg obtained the results of the MRI he had previously ordered and referred Plaintiff back to Dr. Ramberg for a surgical consult regarding Plaintiff's spine. (*Id.*, at pp. 8-9.) Dr. Ramberg recommended surgery for a new bulging disc in Plaintiff's spine and discussed the risks and benefits of the surgery with Plaintiff, and sent a request for surgery to CMO Dr. Ugwueze. (*Id.* at p. 9.) However, despite Plaintiff's continuing and increasing pain, CMO Ugwueze denied the surgery and requested additional information on its risks and potential benefits. (*Id.*) Shortly after CMO Ugwueze denied the surgery, Dr. Schraffenberg discontinued Plaintiff's morphine. (*Id.*) Plaintiff was then transferred to another

6

yard at SATF where Dr. Sunduram was assigned as his PCP. (*Id.*)

Dr. Sunduram reviewed Plaintiff's medical file and acknowledged that another surgery had been recommended and that Plaintiff's pain was still very high and was interrupting Plaintiff's sleep. (*Id.*) Despite this, Dr. Sunduram only prescribed Tylenol with Codeine for Plaintiff and advised Plaintiff to obtain medication from mental health to help him sleep. (*Id.*) Plaintiff was thereafter designated a "high risk medical inmate." (*Id.*)

Plaintiff states cognizable claims against Dr. Ignibinoza, Dr. Scharffenberg, Dr. Kandkhorova, Dr. Sunduram, and CMO Ugwueze for acknowledging and ignoring the treatment plans and surgical recommendations of outside specialists Dr. Ramberg and Dr. Serxner -- to whom he was sent for treatment. *See Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (concluding that reliance on "non-specialized" medical conclusions may constitute deliberate indifference to a plaintiff's medical needs), overruled on other grounds by *Peralta*, 744 F.3d 1076; *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference."). Thus, Plaintiff states a claim for deliberate indifference to his serious medical needs against Dr. Ignibinoza, Dr. Scharffenberg, Dr. Kandkhorova, Dr. Sunduram, and CMO Ugwueze upon which he should be allowed to proceed.

Plaintiff alleges that SATF is not a high risk medical care facility, but that Defendants CCII May and AW Odle have forced him to stay there because of their decision as the Unit Classification Committee ("UCC") which was made solely because of overcrowding. (Doc. 15, p. 9.) As stated in the prior screening order, the resources available to prison officials, including financial resources, or the lack thereof may be considered to determine whether a prison official responded reasonably to a known risk. *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (overruling *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012) and *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) to the extent they can be read to preclude jurors from considering lack of resources in cases involving claims for money damages against prison officials who lack authority over budgeting decisions). Plaintiff does not state a cognizable claim for the UCC decision by CCII May and AW Odle -- which he alleges has caused him to remain

7

inappropriately housed at SATF.

### 2. Injunctive and Declaratory Relief

Plaintiff seeks injunctive relief by way of an order for CCII May and AW Odle and the UCC to immediately transfer him to "(CIM) Chino." (Doc. 15, p. 11.) Plaintiff also recently filed a motion seeking transfer to an "intermediate medical facility" which is construed as a motion for injunctive relief. (Doc. 22.)

The pendency of this action does not give the Court jurisdiction over prison officials in general, over the conditions of Plaintiff's confinement, or over the CDCR facility where he is housed. *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the cognizable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 492-93; *Mayfield*, 599 F.3d at 969.

Plaintiff attached a UCC report to his most recent motion. The UCC report shows that, because of his medical condition, Plaintiff's housing "endorsement" at SATF "is no longer appropriate." (Doc. 22, p. 7.) The UCC report recommends transfer to "CIM II SNY" or to "MCSPII SNY" to accommodate Plaintiff's medical needs. (*Id.*) However, it notes that "the UCC's transfer recommendation is just that, a recommendation, and that due to Departmental need at the time [Plaintiff's] case factors coupled with appropriate/available institutions, the CSR may elect to transfer to a location neither requested by the inmate nor recommended by the committee." (*Id.*) Thus, decisions as to when and where to transfer Plaintiff are ultimately made by the Department of Corrections and Rehabilitation -- not by any parties to this action.

Plaintiff does not seek the temporary restraining order and/or preliminary injunction against any of the Defendants who remain in this action. "A federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; *it may not attempt to determine the rights of persons not before the court*." *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985) (emphasis added). The Court thus lacks jurisdiction to direct Plaintiff's transfer to another facility, even when necessitated by his medical condition.

The issue is not that Plaintiff's medical condition and appropriate housing are not serious, but they cannot and do not overcome what is a *jurisdictional* bar. *Steel Co.*, 523 U.S. at 103-04 ("[The] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.") However, due to the seriousness of Plaintiff's medical condition, the CDCR Director, the Federal Receiver, the SATF Warden, and the SATF Litigation Office are requested to look into the matter and facilitate Plaintiff's transfer to a facility which is able to provide appropriate medical care for Plaintiff's condition.[1]

Plaintiff also seeks declaratory relief. Because Plaintiff's claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. *Rhodes*, 408 F.3d at 565-66 n.8. Therefore, Plaintiff's declaratory relief claim should be dismissed.

**RECOMMENDATION**

Plaintiff has stated cognizable claims under the Eight Amendment against Dr. Ignibinoza, Dr. Scharffenberg, Dr. Kandkhorova, CMO Ugwueze, and Dr. Sunduram upon which he should be allowed to proceed. However, the deficiencies as to Plaintiff's claims against CCII T. May and AW B. Odle are not capable of being cured through amendment which makes leave to amend futile. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, it is **HEREBY RECOMMENDED** that Plaintiff be allowed to proceed on claims under the Eighth Amendment, for deliberate indifference to his serious medical, against Dr. Ignibinoza, Dr. Scharffenberg, Dr. Kandkhorova, Dr. Ugwueze, and Dr. Sunduram and that all other claims and defendants be dismissed with prejudice.

It is further **RECOMMENDED** that Plaintiff's requests for injunctive relief be **DENIED**. The Clerk's Office is directed to forward a copy of this order and Plaintiff's motion (Doc. 22) to the CDCR Director, Federal Receiver, SATF Warden, SATF Litigation Coordinator, and SATF Ombudsman to help facilitate appropriate housing for Plaintiff's medical needs.

---

[1] Placement and transfer to another facility for medical purposes, in light of Plaintiff's housing status and other custody or classification factors, is left to the sound discretion of prison officials.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 8, 2017**                                /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE